UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ATCHAFALAYA BASINKEEPER and LOUISIANA CRAWFISH PRODUCERS ASSOCIATION – WEST | CIVIL ACTION NO. 6:10-cv-1085 |
| VERSUS | JUDGE DOHERTY |
| MALLARD BASIN INC. and WHISKEY BAY ISLAND, LLC | MAGISTRATE JUDGE HANNA |

and

| | |
|---|---|
| LOUISIANA CRAWFISH PRODUCERS ASSOCIATION-WEST, ET AL. | CIVIL ACTION NO. 6:11-cv-0461 |
| VERSUS | JUDGE DOHERTY |
| LT. GENERAL ROBERT L. VAN ANTWERP, ET AL. | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING AND ORDER**

Before the undersigned, on referral from the District Judge for ruling, is the Federal Defendants' Motion for Voluntary Remand and Temporary Stay of the Litigation. [Rec. Doc. 50, 53] After considering the record, the oral arguments presented on February 29, 2012, and the briefs of the parties filed before and since the arguments,  the undersigned finds that the motion should be GRANTED.

*Factual and Procedural Background:*

In 2010, Louisiana Crawfish Producers Association – West and Atchafalaya Basinkeeper sued Whiskey Bay Island, LLC and Mallard Basin, Inc., alleging the defendants violated the Clean Water Act by filling wetlands and other alleged wrongful

and environmentally harmful activities. A counterclaim has been filed by Whiskey Bay Island, LLC and Mallard Basin, Inc. against the Plaintiffs for litigation costs pursuant to 33 U.S.C. §1365(d). [Rec. Doc. 1 and 13]  In 2011, by a separate proceeding, Louisiana Crawfish Producers Association – West, Atchafalaya Basinkeeper, and the Louisiana Environmental Action Network sued the United States Army Corps of Engineers concerning the issuance of 'after-the-fact' permits to Whiskey Bay Island, LLC and Mallard Basin, Inc. for activities that had been conducted in and around Fisher Lake. [Rec. Doc. 1, Civil Action No. 11-cv-461]  The factual basis for both the 2010 and 2011 lawsuits is the same--activities in and around Fisher Lake[1] in the Atchafalaya Basin.  The 2010 lawsuit alleges the defendants' activities were conducted without a valid permit; the 2011 lawsuit alleges the Corps of Engineers violated the Endangered Species Act and other laws when it issued the after-the-fact permits to the defendants.

On June 29, 2011, the parties filed a Joint Motion to Stay Proceedings, pending resolution of permit issues in the 2011 suit:

> "Plaintiffs and Defendants in this lawsuit are in agreement that the resolution of the "2011 lawsuit" will have a bearing on the "2010 lawsuit." A stay could save the court and the parties both time and resources since the resolution of the 2011 lawsuit may moot or clarify issues." [Rec. Doc. 28]

The motion was denied September 7, 2011; the two suits were consolidated the same day. [Rec. Doc. 34, 35]  During a conference among the parties on September 7, 2011, the

---

[1] In the submissions of the parties the area at issue has been called Fisher Lake and Fisher Bottoms.  The use of 'Fisher Lake' in this document is intended to apply to the property at issue.

parties were informed of a transfer of ownership of all or some of the property at issue in the litigation. On July 25, 2011, Mallard Basin transferred its interest in the property at issue to Atchafalaya Investments, LLC. [Rec. Doc. 52-1, p. 1] The new owner sought new permits or alternatively transfer of the old permits to the new owner. Additionally, the new owner sought to add a use to the permits for recreational duck/deer hunting, frogging, crawfishing, fishing, bird watching, alligator hunting, and general wildlife enjoyment.

With the ownership change and the request for transfer of permits, on November 10, 2011, the Corps of Engineers communicated with the new owner by certified letter. [Rec. Doc. 50-2, p. 2] In the letter, the Corps summarized the scope of the permits issued to Mallard Basin and also notified the new owner of the litigation underway in this court relative to the permits. Per the Corps:

> In light of (I) the alleged violations of environmental law advanced by the plaintiffs in the litigation mentioned above, (ii) the new ownership of Fisher Bottoms and the potential for new project uses, and (iii) the agency's absence of knowledge about the present condition of the property, in particular the permittee's activities and water management practices since we issued these permits more than a year ago, we believe a reevaluation of permit conditions is appropriate before we respond to your transfer request. [Rec. Doc. 50-2, pp.2-3]

Also in the letter, the Corps declared its intention to review its original findings, modifying them, if warranted, per its authority derived through 33 C.F.R. 325.7. The letter also indicated that after its review, the Corp may call for modification of permit terms prior to transfer to the new landowner. It may also require suspension of the

permits pending acceptance of modifications, or revocation of the permits altogether if the Corps determined such action to be in the best public interest. The reevaluation process was described in detail in the letter, including possible actions to be taken based on evidence gathered.  The required time period for completion of the Corps' review was estimated to be between 90-120 days. [Rec. Doc. 50-2, p. 3-4].

     The movants seek a voluntary remand without *vacatur* of the two permits challenged in this action. They also seek a stay of the litigation pending re-evaluation of the permitted activities.  The Corps represented that it has already commenced a full review of the permits at issue in this litigation, which it will continue regardless of the court's ruling on the motion at issue.  In beginning the review process, the Corps has determined that the originally anticipated 120 day time window referenced in communications with the new landowner is not a practical estimate, and at oral argument, Corps representatives indicated that the review is now expected to be completed by the end of August, 2012. The Corps has urged that it would be practical to stay this litigation to allow that process to be completed, since the end result may result in (a) revocation of the permits altogether, (2) modification of the permits on transfer to the new owner, or (3) ratification of the permits as originally granted, reissuing them to the new owner. According to the Corps, revocation would provide the plaintiffs with the relief they are seeking in this litigation, mooting the matter, without the expense in time and money of continuing the litigation process during the evaluation period.

The opposing plaintiffs urge that the proposed remand should not be allowed unless the permits at issue are vacated during the Corps review period. They express concern that allowing the permits to stand during the review period would result in further harm to the environment, including the continued authorization of draining of Fisher Lake, which the plaintiffs contend is harmful to the environment and the wildlife inhabiting the Fisher Lake area.  Per the plaintiffs, a stay would allow dams, ditches and other water control structures to remain in place, continuing to harm crawfishermen by preventing their access to fishing grounds. [Rec. Doc. 52]

As the permits/property ownership currently stands, the permits at issue were issued to the previous owners of Fisher Lake who no longer own the land and the new owner of the property presently has no permit, however, the activities authorized to the prior permit holder, which are challenged by the plaintiffs in both of these consolidated cases, may continue.  The new owner has sought to have the permits reissued or transferred, which effort has provoked the review by the Corps.  The plaintiffs' concern over a stay without *vacatur* arises out of what they perceive will happen to the Atchafalaya Basin between the present time and the Corps' arrival at a final decision, if the contested activities are allowed to continue.

## APPLICABLE LAW AND DISCUSSION

***The Corps' Authority to Review its Permits:***

Provisions of 33 C.F.R. §325.7 allow the district engineer of the Corps to reevaluate the circumstances and conditions of any permit and initiate action to modify, suspend, or revoke a permit as may be made necessary by considerations of the public interest. 33 C.F.R. §325.7(a). The general rule is that, even without such statutory authority, an administrative agency has the inherent authority to reconsider its decisions. *Macktal v. Chao*, 286 F.3d 822, 825-26(5th Cir. 2002). The authority is not unlimited, however, and an agency may not reconsider its own decision if to do so would be arbitrary, capricious, or an abuse of discretion. The reasonableness of an agency's reconsideration implicates two opposing policies: "the desirability of finality on one hand and the public's interest in reaching what, ultimately, appears to be the right result on the other." *Id.*, quoting *Civil Aeronautics Board v. Delta Air Lines, Inc.*, 367 U.S. 316, 321, 81 S.Ct. 1611,1617, 6 L.Ed 2d 869(1961).

***Standard for Granting a Voluntary Remand and Stay:***

When there is ongoing litigation related to the actions of an agency, which are to be reconsidered, a motion to remand or hold the case in abeyance pending reconsideration has been found to be appropriate. *See Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C.Cir.1962) (stating that an agency wishing to reconsider its action, should move the court to remand or hold the case in abeyance pending the agency's reconsideration). Such motions are often granted to allow an agency to consider new

evidence that became available after the agency's original decision. *See, e.g., Ethyl Corp. v. Browner*, 989 F.2d 522, 523-24 & n. 3 (D.C.Cir.1993). Such decisions "allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Lamprecht v. FCC*, 958 F.2d 382, 385 (D.C.Cir.1992). In the case where an intervening event may affect the validity of the agency action at issue, a remand is generally required. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028-29 (Fed.Cir.2001) (*citing Ethyl*, 989 F.2d at 524); *see also Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir.2004) (noting that it can be "an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action"). Even in the absence of intervening events, upon an agency's remand request, the reviewing court still has discretion over whether to remand. *See, e.g., id.* at 417 (*citing SKF USA*, 254 F.3d at 1029). In that situation, as long as the agency's concern is substantial and legitimate, a remand is usually appropriate. An agency's remand request may be refused if the request is frivolous or in bad faith. *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C.Cir.1998). The undersigned has considered the recent transfer of ownership of the property at issue, the proposed new uses and the agency action to review the permits in light of the new uses sought by the new owners. On that record, the court cannot say and does not find that the agency's remand request is frivolous or in bad faith.

Additionally, the Court has considered the potential results of agency review and the effects of possible results on this litigation. After completion of the agency review process as described by the Corps, the permits at issue in this litigation will either be (a) reinstated in their current form and transferred to the new owners, (b) modified by limitation or expansion, or (c) revoked altogether, all options contemplated and authorized by 33 C.F.R. §325.7. If the permits are revoked, then the legal issues presented in both cases in this litigation will be moot, and Plaintiffs will have 'won the day.' If the permits are modified and transferred, then this litigation *may* continue depending on the modifications, but the new owners will be made parties going forward. If the permits are ratified and transferred, then this litigation will proceed as it started.

The parties agree that the burden is upon the Corps to establish the need for a stay of the captioned proceedings-to make a case of hardship or inequity in being required to go forward with the litigation if there is a fair possibility that the stay would work damage to someone else. In its analysis, a court should take into account the plaintiff's interest in bringing the case to trial. *Clinton v. Jones*, 520 U.S. 681, 707-08, 117 S.Ct. 1636, 137 L.Ed.2d 945(1997). "Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed.2d153(1936) The court must also carefully consider the time reasonably expected

for resolution of the 'other case,' and stay orders should be reversed when they are found to be immoderate or of an indefinite duration. *Landis*, 299 U.S. at 257, 57 S.Ct. At 167.

Given the current posture of the case, combined with the three possible outcomes of the agency review, there is little to be gained by pressing on with this litigation during the reconsideration/review process. The new owner Atchafalaya Investments, LLC., and Mallard Basin, Inc., the current permittee and owners of a small portion of the property at issue, have agreed that "if the Court orders the stay, the owners of the property and the permittee have agreed to suspend all water management activities and the application of herbicides ...so as to assure the Court that no such activities by the Defendants will affect the environmental condition of the property." [Rec. Doc. 66, p. 1] Specifically, the defendants, together with the new owner have proposed a voluntary cessation of property management activities for the next four months (through the end of June, 2012), following which they would request an opportunity to advise the Court of the then-current environmental condition of the property and to request any adjustment that might be necessary at that point in time. [Rec. Doc. 66, p. 2-4] By that agreement, the Fisher Lake will not be drained during the Spring months described as critical by Plaintiffs, and there will be no application of herbicides in the area, avoiding the damaging environmental impact alleged and feared by Plaintiffs in that regard. These conditions, agreed upon by the new owner (who is not a party to this litigation), the defendants, and approved by the Corps (though opposed by Plaintiffs), combined with the Corps' declaration that its

review process will be complete in August, 2012, allow for the establishment of a reasonable duration for any stay of proceedings, which, in fact, reduces the plaintiffs' exposure to alleged environmental harms from the conditions which would be present had the Corps review not been undertaken. Such a limited stay also serves the interests of the parties in avoiding unnecessary time and expense of litigation. Further, the Court will be kept apprised of the progress of the review by the Corps during the interim and encourages the process to proceed as expeditiously as reasonably possible.

## CONCLUSION

Based upon the undersigned's review of the record and consideration of the arguments and positions of the parties:

IT IS HEREBY ORDERED that the Motion for Voluntary Remand without *vacatur* is GRANTED;

IT IS FURTHER ORDERED that both of the consolidated cases are STAYED pending further order of the Court;

IT IS FURTHER ORDERED THAT:

> A. The landowners and the current permittee shall cease property management activities at Fisher Lake for the next four months, through the end of June, 2012. Such cessation shall include and encompass the seasonal draining of Fisher Lake and the application of herbicides in the area;

> B. No action shall be taken by any party or the landowner participant in the standstill agreement in contravention of the agreement during the referenced four month period, through the end of June, 2012. Further, after the expiration of the four month period, no property management activities shall be undertaken on the subject property without at least 21 days prior notification to the Court and the

plaintiffs in both consolidated cases of the intention to so act, the reason for the action and the details of any proposed action.

IT IS FURTHER ORDERED that the Corps will apprise the Court and counsel of its progress in the permit review process at the beginning of each month by letter to the undersigned with copies to all counsel.

Signed at Lafayette, Louisiana this 15th day of March, 2012.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)