# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

LOUISIANA CRAWFISH PRODUCERS   *CIVIL NO. 6:10-1085 c/w 6:11-0461
ASSOCIATION - WEST, ET AL.

**VERSUS**                              *JUDGE DRELL

**MALLARD BASIN, INC., ET AL.**         *MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation are the Motions
to Dismiss filed by the U.S. Army Corps Engineers ("the Corp") and Lieutenant
General Thomas P. Bostick ("Bostick"), collectively, "the federal defendants". [rec.
docs. 224 and 240].   By these Motions, the federal defendants seek dismissal of the
first, second and third causes of action asserted by the Louisiana Crawfish Producers
Association - West, Atchafalaya Basinkeeper and Louisiana Environmental Action
Network (collectively "the plaintiffs") in their Third and Fourth Amended Complaints.
More specifically, the federal defendants contend that the plaintiffs' claim under the
Endangered Species Act ("ESA") in their first cause of action and the claim asserted in
their third cause of action, premised on the same ESA violation alleged in their first
cause of action, have been rendered moot by the removal of the Louisiana black bear
from the Federal List of Endangered and Threatened Wildlife.   They further argue that
the mooting of the first cause of action renders any "as applied" challenge in the third

cause of action unsupported.[1]  In addition, they argue that the plaintiffs' claim under the Administrative Procedures Act ("APA") asserted in their second cause of action is moot not only due to the delisting of  the Louisiana black bear, but because an action under the APA is precluded since an adequate remedy exists under the ESA, namely, an action under the citizen-suit provision.  The plaintiffs have filed Opposition [rec. docs. 232 and 247], to which the federal defendants have filed a Reply.  [rec. doc. 236].  Oral argument of the Motion, was held on August 2, 2016 and the Motions were taken under advisement.

For the reasons set out below, it is recommended that the Motions to Dismiss be **granted** and that the first, second and third causes of action under the Endangered Species Act asserted by the Louisiana Crawfish Producers Association - West, Atchafalaya Basinkeeper and Louisiana Environmental Action Network in their Third and Fourth Amended Complaints be **dismissed without prejudice.**

## BACKGROUND

The facts and procedural history underlying this litigation are largely uncontested.  In 2010, Louisiana Crawfish Producers Association – West and

---

[1]Although the federal defendants also sought dismissal of any facial, policy based challenge on standing and statute of limitations grounds, in their Fourth Amended Complaint, the plaintiffs clarify that they are not asserting a facial challenge to the Corp's after-the-fact permitting regulation. [rec. doc. 232, pg. 14 and fn. 3].  Accordingly, these arguments need not be addressed.

Atchafalaya Basinkeeper sued Whiskey Bay Island, LLC and Mallard Basin, Inc., alleging the defendants violated the Clean Water Act ("CWA") by filling wetlands and other alleged wrongful and environmentally harmful activities without a valid permit in Fisher Lake. [Civil Action No. 10-cv-1085].

In March, 2011, by a separate proceeding [Civil Action No. 11-cv-461], Louisiana Crawfish Producers Association – West, Atchafalaya Basinkeeper, and Louisiana Environmental Action Network sued the United States Army Corps of Engineers ("the Corps") concerning the issuance of two 'after-the-fact' permits to Whiskey Bay Island, LLC and Mallard Basin, Inc. for activities that had been conducted in and around Fisher Lake. These permits are referred to as the "NWP Authorization",  and the "Individual Permit."  Plaintiffs asserted four causes of action under the ESA, APA, National Environmental Policy Act ("NEPA") and CWA.  The sole endangered or threatened species referenced by the plaintiffs was the Louisiana black bear. [rec. doc. 1].  It is undisputed that at the time this Complaint was filed, the Louisiana black bear was listed as a federally protected threatened species.  *See* 57 Fed. Reg. 588 (January 7, 1992) (listing the Louisiana black bear); 74 Fed. Reg. 10,350 (March 10, 2009) (designating critical habitat of the Louisiana black bear, including the Atchafalaya Basin).

The cases were consolidated since the 2010 lawsuit alleges the defendants' activities were conducted without a valid permit and the 2011 lawsuit challenges the validity of the after-the-fact permits issued by the Corps to the defendants.

Thereafter, Mallard Basin transferred its interest in the property at issue to Atchafalaya Investments, LLC. ("Atchafalaya").   Atchafalaya sought new permits or alternatively transfer of the old permits.  Additionally, Atchafaylaya sought to add a use to the permits for recreational duck/deer hunting, frogging, crawfishing, fishing, bird watching, alligator hunting, and general wildlife enjoyment.  The court issued an order staying the consolidated cases to allow for completion of the review process. [rec. doc. 68].  On February 13, 2013, the Corps reissued the permits and approved the transfer of the permits to Atchafalaya.  The stay was therefore lifted and the consolidated cases were reopened. [rec. doc. 85].

After sending an intent to sue letter to the Corps, plaintiffs filed a Second Amended Complaint to challenge these actions.[2] [rec. doc. 119].   Plaintiffs again asserted causes of action under the ESA, APA, NEPA and CWA. [*See Id.*].  Again, the sole endangered or threatened species referenced by the plaintiffs was the Louisiana black bear. [rec. doc. 119].

---

[2]A First Amended Complaint had previously been filed in which plaintiffs asserted an additional cause of action under the APA. [rec. doc. 48].

It was then discovered that on October 22, 2014, the Corps permitted a modification to the Individual Permit granting authority for Atchafalaya to replace the existing water control structure.  On April 13, 2016, the plaintiffs filed a Third Amended Complaint challenging this action.  Again, the sole endangered or threatened species referenced by the plaintiffs was the Louisiana black bear. [rec. doc. 227, ¶ 17, 20, 37, 214, 216].

Effective April 11, 2016, the United States Fish and Wildlife Service ("FWS") removed the Louisiana black bear from the Federal List of Endangered and Threatened Wildlife because the Louisiana black bear "ha[d] recovered and no longer meets the definition of an endangered or threatened species under the Endangered Species Act of 1973, as amended." [rec. doc. 217-1, 81 Fed. Reg. 13,124 (March 11, 2016), 2016 WL 913050, at *13124].  The final rule also removed the designated critical habitat for the Louisiana black bear. [*Id.*]   As a result, the federal defendants filed their Partial Motion to Dismiss plaintiff's first and third causes of action asserted in their Third Amended Complaint [rec. doc. 224].

Thereafter, the plaintiffs sought leave to file a Fourth Amended Complaint to "limit the claims in their Third Cause of Action and eliminate certain requests for relief as they relate to the Corps' after-the-fact permitting regulation, promulgated as 33 C.F.R. 326.3(e)", which changes were allegedly "necessitated by the now-effective

federal rule delisting the Louisiana black bear." [rec. doc. 227].  That Complaint was filed on May 18, 2016. [rec. doc. 231]. As was the case with all of the plaintiffs' prior complaints, the sole endangered or threatened species referenced by the plaintiffs is the Louisiana black bear. [rec. doc. 231, ¶ 17, 20, 37, 64, 65, 75, 105, 133,134, 135, 149, 150, 214, 215, 216].

Plaintiffs' Fourth Amended Complaint is substantially similar to their Third Amended Complaint with the exception that paragraph 224[3], which was included in plaintiff's third cause of action, has been deleted.  Plaintiffs also deleted the relief requested in paragraphs C, D and E of their Third Amended Complaint that the court (1) declare the Corp's practice of issuing after-the-fact permits illegal, (2) enjoin the Corps from issuing any after-the-fact permits until it can insure that consultation pursuant to Section 7 of the ESA can occur and (3) declare 33 C.F.R. § 326.3(e), authorizing after-the-fact permits, is invalid and illegal as applied to activities in the Atchafalaya Basin.  In the Fourth Amended Complaint, plaintiffs pray, as they did in the Third Amended Complaint, for orders declaring the challenged permits invalid, declaring the Corps' 2014 decision to modify the Individual Permit to be arbitrary and capricious, and vacating and remanding the challenged permits and the Corps'

---

[3]That paragraph reads as follows: "The Corps' after-the-fact permitting program is illegal as applied in the Atchafalaya Basin to actions which may affect listed species."

associated finding of no significant impact.[4] [rec. doc. 231, Prayer for Relief, ¶ A, B and C].

In response, the federal defendants filed a Motion to Dismiss  plaintiff's first and third causes of action asserted in their Fourth Amended Complaint. They also moved to dismiss plaintiffs second cause of action. [rec. doc. 240].

In the Fourth Amended Complaint, plaintiffs allege in their first cause of action that the federal defendants violated the ESA when they issued, transferred and modified the challenged permits. [rec. doc. 231, ¶ 214-218].  More specifically, the plaintiffs allege that the federal defendants failed to consult with the FWS as required by 16 U.S.C. § 1536(a)(2) "to insure that issuing the challenged permits would not likely jeopardize the continued existence of the Louisiana black bear or result in the destruction or adverse modification of critical habitat of the Louisiana black bear." [*Id.* at  ¶ 214, *see also*  ¶ 216, 218 ].  Plaintiffs further allege that in exercising their permitting authority, the federal defendants failed to carry out a program for the conservation of the Louisiana black bear as required by 16 U.S.C. § 1536(a)(1).  [*Id.* at ¶ 215].  They also allege that the federal defendants violated 16 U.S.C. § 1536(d) by "mak[ing] [] irreversible or irretrievable commitment[s] of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of

---

[4]The plaintiffs additionally reassert their request for costs, attorney and expert witness fees, and general request for other relief this Court may deem appropriate. [rec. doc. 231,  ¶ D and E].

any reasonable and prudent alternative measures which would not violate subsection (a)

(2)."  .  [*Id.* at  ¶ 217].

Plaintiffs allege in their second cause of action that the federal defendants'

decision to issue, transfer and modify the challenged permits was "arbitrary and

capricious, an abuse of discretion, otherwise not in accordance with the law, and

unwarranted by the facts", thereby violating 5 U.S.C. § 706(2) of the APA.  [*Id.* at  ¶

220, *see also* 219].  The sole federal law cited by the plaintiffs in support of their  APA

claim is the ESA.  The plaintiffs allege that the federal defendants "arbitrarily and

capriciously failed to consult with the [FWS] to insure that issuing the challenged

permits would not likely jeopardize the continued existence of the Louisiana black bear

or result in the destruction of adverse modification of critical habitat of the Louisiana

black bear" in violation of 16 U.S.C. § 1536(a)(2) of the ESA.  [*Id.* at  ¶ 221].

Plaintiffs allege in their third cause of action that given the FWS' policy not to

consult on applications for after-the-fact permits, as applied to the challenged permits,

the Corp's use of 33 C.F.R. § 326.3(e), which authorizes the issuance of after-the-fact

permits, violated the ESA. [*Id.* at 222].  The Court presumes the alleged violation

occurred by allowing issuance of the challenged after-the-fact permits without

consulting with the FWS to insure that issuing the challenged permits would not likely

jeopardize the continued existence of the Louisiana black bear or result in the

8

destruction or adverse modification of critical habitat of the Louisiana black bear. As such, plaintiffs allege that the Corps' use of the regulation as applied to the challenged permits was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and unwarranted by the facts", thereby violating 5 U.S.C. § 706(2) of the APA. [*Id.* at 222 and 223].

## LAW AND ANALYSIS

**Rule 12(b)(1) Motion to Dismiss Standard**

Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *In re FEMA Trailer Formaldehyde Products Liability Litigation,* 668 F. 3d 281, 286 (5th Cir. 2012) *quoting Home Builders Ass'n, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998); *Harmony Life Hospice, Inc. v. Sebelius,* 2014 WL 1246197, *3 (W.D. La. 2014)*. By virtue of Article III, federal courts can only act in matters presenting actual cases or controversies. *Harmony Life Hospice, Inc.,* 2014 WL 1246197, *3. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). "Case or controversy" includes the distinct, but related concepts of standing, mootness, ripeness, and political question. *Harmony Life Hospice, Inc.,* 2014 WL 1246197, *3. Thus, mootness presents a

question of subject matter jurisdiction which may be resolved through a Rule 12(b)(1)

motion.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *Harmony Life Hospice, Inc.*

2014 WL 1246197, *2-3; *Risby v. United States*, 2006 WL 770428, *7 (N.D. Tex.

2006) (and cases cited therein).

A case is deemed moot "when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome." *Harmony Life Hospice, Inc.*

2014 WL 1246197, *3 *citing United States Parole Comm'n v. Geraghty*, 445 U.S. 388,

396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980);  *See also Murphy v. Hunt*, 455 U.S. 478,

481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam).  "If a dispute has . . .

evanesced because of changed circumstances, . . . it is considered moot.  *Id.,  quoting*

*Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir.1988) (internal citations omitted).

 Thus, a case becomes moot "when it is impossible for a court to grant any effectual

relief whatever to the prevailing party." *Decker v. Northwest Environmental Defense*

*Center*, 133 S.Ct. 1326, 1335 (2013) *quoting Knox v. Service Employees Int'l*, 132 S.Ct.

2277, 2287 (2012)*, View Carre Property Owners, Residents & Assocs., Inc. v. Brown,*

948 F.2d 1436, 1446 (5th Cir. 1991).

The mootness doctrine additionally prevents the issuance of an advisory opinion.

*Matter of Sullivan Cent. Plaza, I, Ltd.*, 914 F.2d 731, 735 (5th Cir. 1990) *citing Hall v.*

*Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201–02, 24 L.Ed.2d 214 (1969).  Thus, in

circumstances where there is no effective remedy available, courts may not issue a ruling, as such ruling would constitute an advisory opinion prohibited under Article III. *Id.,* at 735; *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968).

A case is not moot, however, "if there is a reasonable likelihood that the same controversy will recur." *Harmony Life Hospice, Inc.,* 2014 WL 1246197, *3 quoting Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988).  In such cases, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. at 483 *citing  Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam ).  "[A] a mere physical or theoretical possibility" is insufficient.  *Id.*

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) *In re FEMA Trailer Formaldehyde Products Liability Litigation,* 668 F. 3d at 287.

The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss. *Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 714 (5th Cir. 2012) *citing Life Partners Inc. v. United States,* 650 F.3d 1026, 1029 (5th Cir. 2011) and *Ramming,*

11

281 F.3d at 161; *Harmony Life Hospice, Inc.*, 2014 WL 1246197, at *2 *citing*

*Ramming*, 281 F.3d at 161.Accordingly, the plaintiff constantly bears the burden of

proof that jurisdiction does in fact exist.  *Ramming*, 281 F.3d at 161 *citing Menchaca v.*

*Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[5]

      A dismissal due to a lack of subject matter jurisdiction is not based on the

merits and accordingly, is without prejudice.  *In re FEMA Trailer Formaldehyde*

*Products Liability Litigation,* 668 F. 3d at 286 *citing Ramming,* 281 F.3d at 161.

**The Endangered Species Act**

      The purpose of the ESA is to "to provide a means whereby the ecosystems upon

which endangered species and threatened species depend may be conserved," and "to

provide a program for the conservation of such . . . species . . . ." 16 U.S.C. § 1531(b).

The ESA specifically defines "conserve" and "conservation" as meaning "to use and the

use of all methods and procedures which are necessary to bring any endangered species

or threatened species to the point at which the measures provided pursuant to this

chapter are no longer necessary." 16 U.S.C. § 1532(2).

---

[5]Plaintiffs cite *Larbie v. Larbie*, 690 F.3d 295 (5th Cir. 2012) for the proposition that the party asserting mootness bears a "heavy" burden to establish that the case is moot.  However, *Larbie* deals with the issue of mootness of an appeal, not a Rule 12(b)(1) motion.  Moreover, the party asserting mootness in *Larbie* was the plaintiff who had invoked the Court's jurisdiction in the first instance. Likewise, the other Fifth Circuit case cited by plaintiffs, *Carr v. Alta Verde Industries, Inc*., 931 F.2d 1055 (5th Cir. 1991) does not deal with the question of mootness in the context of a Rule 12(b)(1) motion, but rather was addressing the question at trial.  Nevertheless, even if the federal defendants bear the burden of proof in the context of the instant Rule 12(b)(1) motions, in light of the above discussion, the Court would find that the federal defendants have carried the burden.

To further this goal, the ESA requires federal agencies to consult with the FWS[6] to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary [of the Interior]. . . to be critical . . . ."  16 U.S.C. § 1536(a)(2); *see also* 50 C.F.R.  § 402.01(a).[7]  The ESA further requires that federal agencies "in consultation with and with the assistance of the [FWS], utilize their authorities in furtherance of the purposes of [the ESA] by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of [the ESA].  16 U.S.C. § 1536(a)(1); *see also* 50 C.F.R.  § 402.01(a).  In

---

[6]The Secretary of the Interior is responsible for administering the ESA as it applies to the Louisiana black bear.  *See* 16 U.S.C. § 1532(15).The Secretary delegated his authority to the FWS.  50 C.F.R.  § 402.01(b).

[7]50 C.F.R. § 402.01(a) defines the scope of interagency cooperation set forth in 16 U.S.C. § 1536(a)-(d) in pertinent part as follows:
Section 7(a) grants authority to and imposes requirements upon Federal agencies regarding endangered or threatened species of fish, wildlife, or plants ("listed species") and habitat of such species that has been designated as critical ("critical habitat"). Section 7(a)(1) of the Act directs Federal agencies, in consultation with and with the assistance of the Secretary of the Interior or of Commerce, as appropriate, to utilize their authorities to further the purposes of the Act by carrying out conservation programs for listed species. . . . Section 7(a)(2) of the Act requires every Federal agency, in consultation with and with the assistance of the Secretary, to insure that any action it authorizes, funds, or carries out, in the United States . . . , is not likely to jeopardize the continued existence of any listed species or results in the destruction or adverse modification of critical habitat. . . . Section 7(d) of the Act prohibits Federal agencies and applicants from making any irreversible or irretrievable commitment of resources which has the effect of foreclosing the formulation or implementation of reasonable and prudent alternatives which would avoid jeopardizing the continued existence of listed species or resulting in the destruction or adverse modification of critical habitat.

13

addition, "after initiation of consultation," the ESA prohibits the federal agency and the permit applicant from making "any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures" which would avoid jeopardizing the continued existence of listed endangered or threatened species or resulting in the destruction or adverse modification of critical habitat of such species.  16 U.S.C.  § 1536(d); *see also* 50 C.F.R.  § 402.01(a).

The ESA contains a citizen suit provision which waives Eleventh Amendment sovereign immunity enjoyed by federal agencies for private civil actions seeking injunctive relief against such an agency which is alleged "to be in violation of" the ESA.  16 U.S.C.  § 1540(g)(1)(A).  Thus, the ESA allows a citizen suit for the purpose of obtaining injunctive relief only.  *Id.; see also Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794, 804 (9th Cir. 2008).

**The Administrative Procedures Act**

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review" under the APA.  5 U.S.C. § 704.

Pursuant to the APA, a Court is authorized to "hold unlawful and set aside agency action, findings, and conclusions found to be . . .  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Plaintiffs' First and Third Causes of Action

In this case, plaintiffs' first cause of action alleges that the federal defendants violated the ESA by failing to consult with the FWS to insure that issuing, transferring and modifying the challenged permits would not likely jeopardize the continued existence of the Louisiana black bear, effectively foreclosing the formulation of reasonable alternatives which would not violate the ESA, and failing to consult with the FWS to utilize their authorities to further the purposes of the ESA by carrying out a program for conservation of the Louisiana black bear.  The plaintiffs' third cause of action is an "as applied" challenge under the APA to the  after-the-fact permit regulation, in light of the federal defendants' alleged failure to consult with the FWS concerning the Louisiana black bear.  Thus, both causes of action are premised  on the same violation of the ESA that the federal defendants' failed to consult with the FWS.

While the plaintiffs argue that the delisting of the Louisiana black bear has no legal effect on their ESA claims, the Court disagrees.  The ESA allows citizen suits solely for the purpose of obtaining injunctive relief against an agency which is "in violation of" the ESA.  16 U.S.C. § 1540(g)(1)(A).  "The legislative history of this

15

provision, although sparse, indicates that Congress anticipated citizen suits to enjoin prospective injuries", not to remedy past violations.  *Forrest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 785 (9th Cir. 1995) *citing* H.R.Rep. 412, 93d Cong., 1st Sess. 19 (1973) U.S. Code Cong. & Admin. News 1973, P. 979.  As such, the statute has been interpreted as forward-looking. *Center for Biological Diversity*, 566 F.3d at 804.

The federal defendants cannot now be found "in violation of" the ESA because the Louisiana black bear, the sole species on which plaintiffs base their ESA claims, has been delisted and is no longer subject to the legal protections afforded under the ESA.  Species that are not listed as threatened or endangered have no protected status under the ESA, and duties imposed on federal agencies do not attach to actions that do not affect a threatened or endangered species. There can be no violation of the ESA where there is no ESA protected species. Whatever might have been the case previously, at present, because the Louisiana black bear has been delisted, there is no effective relief that this Court could fashion to redress the plaintiffs' alleged ESA related injuries, and any such decision by this Court would constitute an advisory opinion.  Therefore, the claims under the first and thirda causes of action are moot.

This Court's conclusion is bolstered by the decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987).  Although *Gwaltney* was

construing the citizen suit provision of the Clean Water Act, that provision contains language similar to that contained in the citizen suit provision of the ESA.  The *Gwaltney* Court articulated that "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. Congress could have phrased its requirement in language that looked to the past ("to have violated"), but it did not choose this readily available option."  *Gwaltney*, 484 U.S. at 57.  Therefore, the Court concluded that the CWA does not confer jurisdiction over "wholly past" violations.  *Id.* at 60-61.

Application of the same reasoning in *Gwaltney* leads to the conclusion that the citizen suit provision of the ESA does not confer jurisdiction over "wholly past" violations either.  The citizen suit provision of the ESA is, like that of the CWA, phrased in forward-looking terms, "to be in violation of", rather than in language which looks to the past.  *See* 16 U.S.C.  § 1540(g)(1)(A).  As in the CWA, Congress could have used language that looked to the past (i.e. "to have violated"), but did not choose this readily available option.

Further, the federal defendant's alleged failure to consult with the FWS so as not to jeopardize the continued existence of the Louisiana black bear or result in the destruction or adverse modification of the Louisiana black bear's critical habitat is not

only "wholly past", but also cannot continue into the future or be deemed ongoing, intermittent or recurring because the Louisiana black bear no longer enjoys protected status under the ESA.  Likewise, since the Louisiana black bear is no longer listed as an endangered or threatened species, the federal defendants' failure to consult with the FWS to utilize their authorities in furtherance of the ESA by carrying out programs for the Louisiana black bear's conservation cannot continue or be deemed ongoing, intermittent or recurrent in the future.

The Court finds unconvincing the plaintiffs' attempt to distinguish *Gwaltney* on grounds that their claim under the ESA is for a procedural violation, which fundamentally differs from the CWA-prohibited pollution discharge at issue in *Gwaltney*.  When read in conjunction with the Congressional findings, purpose and policy underlying the ESA set forth in § 16 U.S.C. § 1531, the obligations imposed on federal agencies under the ESA, including those imposed under § 1536, cannot be deemed solely procedural as plaintiffs suggest, but rather are intended to be substantive and prospective with the ultimate goal of "halt[ing] and revers[ing] the trend toward species extinction, whatever the cost."  *See Tennessee Valley Authority v. Hill,* 4737 U.S. 153, 184 (1978).  Further, as correctly noted by the federal defendants and as more fully discussed below, whether substantive or procedural, no ESA related obligations attach to federal agency actions that do not affect a threatened or endangered species.

Plaintiffs argue that this Court could declare the federal defendants' past actions were illegal and remand the matter for reconsideration of its permitting decisions. However, on such remand, in the absence of any ESA protected species, there would be no requirement or need for consultation with the FWS.  As such, any declaration by this Court would not vindicate the objectives of the ESA.

At present, this Court cannot fashion any ESA-related relief to redress any future injury resulting from any alleged "cavalier attitude" of the federal defendants as to their ESA imposed duties.  No "reasonable likelihood", "reasonable expectation" or "demonstrated probability" has been shown that the Louisiana black bear will be relisted as a threatened or endangered species.

This same reasoning applies equally to the plaintiffs' third cause of action. Although not an ESA citizen-suit claim, the claim is nevertheless based on the same ESA violation and same protected species underlying the plaintiffs' first cause of action.  Remand for reconsideration of the federal defendants' after-the-fact permitting decisions will redress no injury, nor provide the plaintiffs any relief.  At present, because there is no obligation on the part of the federal defendants to consult with the FWS regarding the Louisiana black bear, re-examination as to whether, in retrospect, it was appropriate for the federal defendants to exercise its after-the fact permitting authority because of its alleged inability to consult with the FWS about the Louisiana

black bear, will provide plaintiffs no effective relief.

The jurisprudence cited by the federal defendants supports this Court's conclusion that plaintiff's first and third ESA claims are now moot.  In *Western Watershed Project v. Bureau of Land Management*, 552 F.Supp.2d 1113, 1137-1138 (D. Nev. 2008) the plaintiffs alleged several claims under the ESA, including that the defendants violated the ESA by failing to consult on the impacts Fire Amendments had on the bald eagle.  The bald eagle was removed from the list of endangered species after suit was filed.  On Motion for Summary Judgment, the defendants argued that "[the plaintiff's] claims regarding the bald eagle [were] moot because the bald eagle [was] no longer a listed species under ESA."  *Id.* at 1137.  The Court held that "[b]ecause the bald eagle was removed from the list of endangered and threatened wildlife, [the de]fendants had no obligation to this species under the ESA."  *Id*. 1137-1138.  Thus, summary judgment was granted in favor of the defendants on "any claim regarding ESA violations on account of the bald eagle."  *Id*. at 1138.

While not decided in the context of a Motion to Dismiss, nor opposed by the plaintiffs, the *Western Watershed Project* court held as a matter of law that the delisting of the cited species, the bald eagle, rendered the plaintiffs ESA claim moot as the defendants no longer had any legal obligations with respect to the bald eagle.  The same is true in this case.  The plaintiffs' ESA claims may no longer be premised upon alleged

harm to the Louisiana black bear as the federal defendants no longer have any legal obligations with respect to the Louisiana black bear.

In *Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794, 804-805, (9th Cir. 2008), the Ninth Circuit held that a citizen suit under the ESA against a permittee was moot because the listed species, the bald eagle, had been delisted following favorable judgment for the plaintiff while the case was on appeal. The plaintiffs claimed that the permittee's activities would harass the bald eagle by disrupting their normal behavior patterns, thereby constituting a "taking" under the ESA.  In finding the case moot, the Court held that "whatever might have been the case previously, [the permittee] cannot violate the ESA regarding the bald eagle, regardless of any decision we render here . . . [b]ecause the bald eagle has been delisted, no present controversy can remain."  *Id.* at 804.

While the plaintiffs attempt to distinguish *Center for Biological Diversity* because it involved a "taking" under the ESA rather than a failure to consult by the permittor, that distinction is without a difference.   A "taking" under the ESA "means that a person may not harass or harm a listed species."  *Id.* at 804 *citing* 16 U.S.C. § 1532(19).  Regardless of the mechanism of harm or the person or entity alleged to have been the cause of such harm, the purported illegal conduct cannot violate the ESA or be redressed thereunder in the absence of a listed species.

In *Humane Society of the United States v. Kempthorne*, 527 F.3d 181 (D.C. Cir. 2008), the plaintiffs successfully enjoined a permit issued by the federal defendants allowing the State to euthanize several gray wolves. *Id.* at 184.  The federal defendants appealed.  While litigation regarding protection for the gray wolf was on appeal, the gray wolf was removed from the endangered species list. *Id.* at 182. That being so, the parties agreed that the case had necessarily become moot, and the court accepted that agreement noting that "[b]ecause the gray wolf is no longer a protected species, the ESA no longer prohibits [the State] from taking the species." *Id*. at 184. The appellate court then went on to vacate the lower court's ruling, rejecting the plaintiff's argument that vacature was improper because the mootness was caused by the voluntary action of the federal defendants.  *Id*. at 185-188.

Plaintiffs argue that *Humane Society of the United States* is of no value given that the plaintiffs conceded mootness.  The Court disagrees.  While the Court did not explain the specific reason as to why it accepted the parties agreement that case had become moot as a result of the delisting, it appears that the conclusion of mootness was obvious to all concerned, including the appellate court, given that there was no further work to be served by the issuance of the injunction.  Further, had the Court not agreed, it would not have issued a merits determination on the issue of vacature based on the doctrine of "mootness by voluntary action."  *See Id.* at 185 *citing U.S. Bancorp*

*Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

The Court also finds *Center for Biological Diversity v. Norton*, 254 F.3d 833 (9th Cir. 2001) is noteworthy because it presents the mirror image of the question before this Court. The suit, which was brought to force the listing of a frog, became moot when the frog was listed. *Id.* at 837 n. 4. This case undercuts the plaintiffs' argument that delisting has no legal effect on their claims. Obviously, the status of a species, whether on or off the endangered or threatened species list, has a legal impact on claims asserted under the ESA.

Finally, the Court does not find the plaintiff's reliance on *Center for Biological Diversity v. Kempthorne*, 2008 WL 659822 (D. Ariz. 2008) well taken. In that case, the court held that the FWS' decision to delist the entire population of bald eagles did not moot the plaintiffs' challenge to the FWS' prior decision not to list the Desert bald eagle as distinct population segment ("DPS") of bald eagles and further, not to list that distinct species of Desert bald eagles as endangered. The FWS argued that "the FWS has already examined all of the relevant information on the DPS issue" when it issued its delisting decision on the entire bald eagle population, and accordingly, the DPS issue was moot. *Id.* at *6. The Court concluded that the distinct population question was not adequately examined by "[t]he handful of interested parties [which] submitted

information concerning the Desert bald eagles' DPS status during the comment period for the FWS's delisting proposal" for the entire population of bald eagles.  Rather, it was necessary to "solicit[] comment from various federal and state agencies, Tribes, and other interested parties on the particular issue of whether listing the Desert bald eagle as a DPS is warranted" as well as additional information regarding "the Desert [bald] eagle and its importance to the Arizona Indian community that the FWS did not consider in its . . . final delisting rule."  *Id*. at *8.  Thus, the Court went on to consider the merits of the FWS' distinct population decision.  *Id*. at 9-15.

Here, the Court is not faced with the merits of a distinct population listing or delisting decision.  To the contrary, the decision to delist the Louisiana black bear is unchallenged.  The sole implication of the decision is its effect on the duties previously owed by the federal defendants under the ESA.  In sum, unlike the Arizona case, the delisting of the Louisiana black bear renders it is impossible for this Court to grant plaintiffs "any effectual relief. " *Decker, supra.*

Second Cause of Action under the APA

During oral argument, the plaintiffs conceded that to the extent their second cause of action relies on the ESA, the same analysis set forth above applies.  Therefore, plaintiff's second cause of action would likewise be moot.  Further, the Court finds that the federal defendants are correct that an action under the APA is unavailable and

24

precluded because an adequate remedy exists under the ESA, namely, an action under the citizen-suit provision. *See* 5 U.S.C. § 704 (authorizing review of final agency actions "for which there is no other adequate remedy in a court. . . .").  The plaintiffs have asserted that same express claim in the first cause of action of their Fourth Amended Complaint.  Plaintiffs' therefore cannot restyle their EPA based allegations as a duplicative claim under the APA.  *American Canoe Ass'n v. U.S. EPA,* 30 F.Supp.2d 908, 927 (E.D. Va. 1998) ("review of [alleged ESA violations] is not available under the APA since the ESA expressly provides an adequate remedy for plaintiffs' claims through its citizen suit provision . . . the APA does not provide an avenue for duplicative review when a statute specifically sets out procedures for review of agency action . . . ."); *McCrary v. Gutierrez*, 528 F.Supp.2d 995, 998-999 (N.D. Cal. 2007) ("if a plaintiff may bring suit against a responsible federal agency under a citizen suit provision of a particular statute, then he may not bring suit solely under the APA . . . . Since the ESA allows Plaintiff to file a citizen suit, the APA cannot provide jurisdiction for Plaintiff's action.); *Center for Biological Diversity v. Hamilton*, 385 F.Supp.2d 1330, 1333 (N.D. Ga. 2005);  *Hawaii County Green Party v. Clinton*, 124 F.Supp.2d 1173, 1193 (D. Hawaii 2000).[8]

_____

[8]*See also Allegheny County Sanitary Auth. v. United States Envtl. Protection Agency*, 732 F.2d 1167, 1177 (3d Cir.1984) ("The Water Pollution Control Act provides an adequate remedy for plaintiff in the circumstances here. . . . [Thus,] preclusion of the APA remedy is proper."); *South Carolina Coastal*

Plaintiffs argue, however, that their APA claim asserted in the second cause of action is broader than just an action for violation of the ESA.  Accordingly, they assert that this broader action should remain pending.  The Court disagrees.

Although the plaintiffs allege generally in paragraphs 219 and 220 of their Fourth Amended Complaint that the federal defendants' decisions to issue, transfer and modify the challenged permits was "arbitrary and capricious, an abuse of discretion, otherwise not in accordance with the law, and unwarranted by the facts", thereby violating 5 U.S.C. § 706(2) of the APA, the ESA is sole federal law cited by the plaintiffs in support of their  APA claim as set forth in paragraph 221.   [*Id.* at  ¶ 219-221].  More specifically, in paragraph 221, the plaintiffs allege that the federal defendants "arbitrarily and capriciously failed to consult with the [FWS] to insure that issuing the challenged permits would not likely jeopardize the continued existence of the Louisiana black bear or result in the destruction of adverse modification of critical habitat of the Louisiana black bear" in violation of 16 U.S.C. § 1536(a)(2) of the ESA. [*Id.* at  ¶ 221].  Plaintiffs have had more than ample opportunity to allege the bases underlying their second cause of action. Nevertheless, despite the filing of numerous Amended Complaints, in their second cause of action there is no allegation that the

---

*Conservation League v. U.S. Army Corps of Engineers,* 2008 WL 4280376, *8 (D. S.C. 2008) *citing Environmental Defense Fund v. Tidwell*, 837 F.Supp. 1344, 1356 (E.D.N.C.1992) ("[I]f a plaintiff can bring suit against the responsible federal agencies under the CWA, this action precludes an additional suit under the APA.").

federal defendants' actions were contrary to or in violation of any federal law other than the ESA, including the CWA or NEPA.  As such, on the allegations presently before this Court, the plaintiffs' second cause of action should be dismissed.

CONCLUSION

Based on the foregoing, it is recommended that the Motions to Dismiss be **granted** and that  the first, second and third causes of action asserted by the Louisiana Crawfish Producers Association - West, Atchafalaya Basinkeeper and Louisiana Environmental Action Network in their Third and Fourth Amended Complaints be **dismissed without prejudice**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile***

27

*Association,* **79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 8th day of November, 2016, at Lafayette, Louisiana.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**